The next matter, No. 25-1404, Sandy Harris, Jr. v. National Grid USA Service Company, Inc. At this time, would counsel for the appellant please introduce himself on the record to begin? May it please the Court, Alan Creed for the appellant, Sandy Harris. With your Honor's permission, I'd like to reserve one minute for rebuttal. You may. Thank you. In order to state a case for retaliation, Mr. Harris must show, one, that he engaged in protected activity, two, that he suffered an adverse action, and three, that his protected activity caused the adverse action. On page 21 of its opposition, National Grid indicates that it's not challenging the element of protected activity. There's also no dispute as to the second element, Mr. Harris's termination was an adverse action. The crux of the appeal concerns the causation of plaintiff's retaliation claims. There are two arguments about causation, one legal, one factual. I will address the factual argument first. In the fall of 2019, some issues were flagged with Mr. Harris's expenses in a replacement business cell phone. These issues are resolved before favorable appraisals of Mr. Harris in the spring of 2020. On March 9, 2020, Mr. Harris meets one-on-one with the head of his business unit, Vice President Gerardi-Familia. Counsel, could I ask you to focus in on the really critical time frame, which is around the request to work out of state, because as I understood, you're opposing counsel's opinion on causation. It really focused on that. And as I understood their argument, it would be helpful to get your response that there can't be causation here because your client's first request for reasonable accommodation and for FMLA leave was on July 30th, that was the reasonable accommodation request. And that was after he was informed that he was being terminated because he was working remotely out of state without permission. So they're saying there can't be causation because the reasonable accommodation request is made after he was told he would be terminated for violating company policy, and then the FMLA request is even a little bit later, I think about a week later. So can you zero in on why they're wrong on that in your view? Well, there's several things that are wrong there, Your Honor. One is that it was undisputed below that the termination decision was not made even as of August 7th. This is in the Paragraph 221 of the Combined Statement of Material Facts, A1445-1446, and this is based on the testimony of Judy Dunn, the Vice President of Human Resources, one of the decision makers, who testified, and this is on A994, that even as of August 7th, there was not a termination decision. Well, isn't... I thought the argument was they made a decision to terminate him if he wasn't going to return. He then made a request for accommodation. That had the effect of putting on hold the termination decision while they attended, as they were required to do, the reasonable accommodation request. And only when they were comfortable that they could deny that request was the termination final. So what happens here is there's this letter on July 30th, right? And pre-stating it, Mr. Harris, there's a whole backstory here that the district court did not address. Mr. Harris is on vacation from July 13th to 27th with approval of his immediate supervisor, Trina Dombrowski, who he contends knew he was out of state. On July 22nd, she calls him while he's on vacation and asks him, according to Mr. Harris, for the first time to attend this in-person training in Providence on July 28th and 29th. And Mr. Harris responds then, saying that he doesn't feel comfortable. He then contacts Dombrowski's direction prior to July 30th, employee health, and contacts employee health. He's informed by employee health that he can work remotely and that, in fact, because of quarantine, he needs to self-quarantine for 14 days. So he wouldn't have been able to go to the training. But, counsel, I guess her question is, was there a request for reasonable accommodation before July 30th? I would submit that the request, according to the testimony, Mr. Harris requested it in conversations with Dombrowski prior to July 30th. And what record citation supports that? There's testimony from Mr. Harris that he requested it. I'll find the exact page and have that, for your honor, on rebuttal. But from plaintiff's perspective, what happened here is, as of March 9th, there's this meeting between Arani Famili and plaintiff, at which he's told by Arani Famili's own testimony, by her own admission at that time, that he has a bright future at National Grid. And Arani Famili, that's on A656, that she testified that she told Harris in this March 9th meeting, you have a bright future at National Grid. According to Arani Famili, her state of mind at that time was that she had believed Harris had a lot of potential. And that's on A651. And then, on April 2nd, Mr. Harris receives a favorable performance review. Dombrowski testifies on A814 that it was a good review. And the district court decision omits any reference to the positive statements. The issue here isn't whether the decision to terminate was wise or proper or deserved. He could have been an all-star. Isn't the issue, did he make a request for the reasonable accommodation before they said that if you don't come back in, the jurisdiction will treat you as resigned? And as I hear your answer, the only thing you're pointing to is the email he sent to Dombrowski requesting to continue working remotely. And his testimony about statements in conversation and his contacts with employee health, all preceding July 30th. But after July 30th. How was the request to be outside the jurisdiction, a request for an accommodation of a disability? Well, it's clear that Mr. Harris, in his conversations with Dombrowski, references health reasons as the reasons why. To be out of the jurisdiction? In other words, his health got worse if he was in Massachusetts than if he was somewhere else. That was in connection with the request to do in-person work. Right, but counsel, I think the issue isn't that. The issue is that, and you can tell us if you're contesting this, I didn't understand you to be contesting it in your briefs, but the company had a policy that said people were allowed to work remotely, as many companies were allowing during COVID, but you needed to be working in the state where your duties were assigned. You could be working remotely at home, but in that state, and if you wanted to be working out of state, for instance, across the country in California, you needed to get approval from your supervisor before you did that. Do you dispute that that was the company's policy at the time? Well, Mr. Harris indicates that he was told by employee health that he could work remotely, but I think there's- Remotely out of state without authorization? Where in the record is that? No, Your Honor, but I think there's some confusion here. So after that July 30th letter, Mr. Harris is allowed to work fully remotely, and the stated reason for Mr. Harris' ... There's a reference made in an email to Mr. Harris about him having storm duties. Mr. Harris, in fact, had no storm duties. His unit was exempt from storm duties. The issue isn't whether he was permitted to work remotely or not. The issue was, was he permitted without supervisor permission to be outside the jurisdiction? And I would say the answer to that is yes. So the defendant allows Mr. Harris, after this July 30th letter, in response to it- But that's when they're entertaining the request for reasonable accommodation. So hardly unusual, they don't jerk him back to the state at the time they're considering a request from him to not be in the state. But all of that postdates the decision to terminate. No, there's no decision to terminate at that time, it's July 30th. If he's not going to be in the state, then he's deemed to have resigned. The defendants, even in their own brief, admit that following this July 30th letter, and Mr. Harris' response to that email requesting reasonable accommodation, that he was permitted to work fully remotely while this whole reasonable accommodation process played out. And the way the reasonable- You can finish, but the July 30th letter you're speaking of is the letter where he's told you can either work on site or we'll terminate you and you can take severance. Correct, and tells him that you can return the same day. And then that is reversed. Once Mr. Harris requests reasonable accommodation, they allow him to work fully remotely. He submits a doctor's letter on August 12th, is told it's not enough, and is never warned you're going to be terminated, is never told, hey, you've got to come back to the service area in that time frame. I want to circle back to where we started, which is at causation. And you mentioned the conversations he had with Dombrowski. By that, you mean the July 22nd phone call he had with Dombrowski, right? And I think there's, I think, deposition testimony, like a page maybe, where he says, maybe I asked for an accommodation or I was asking about quarantine information. That's the phone calls you're referencing, is that right? That's correct. The July 22nd phone call. There were no in-person meetings during this time frame, obviously.  So. Okay, thank you. Your time is up. Thank you. Thank you, counsel. It's time for the counsel to order. Please introduce yourself on the record to begin. Of course, your honors. Lisa Burton, here on behalf of National Grid. Your honors, it is very clear that the plaintiff cannot show causation, because there are only two counts that are up on appeal. They deal with retaliation, one dealing with retaliation under state law, and one dealing with retaliation for the FMLA. And it is undisputed that the evidence shows National Grid made the determination that he would be terminated before he raises any issues regarding a claim for accommodation or a claim to pursue rights under the FMLA. And in fact, what the plaintiff can't get away from, no matter how hard he tries, is his admission in the record, your honor. And the admission in the record is clearly where he acknowledges that he did not raise any requests for ADA accommodation, I mean, accommodation under the state law, or FMLA at the time that the decision was made. And in fact, that is in the record, and it is part of the admissions and the facts, your honors, where it is clear that he acknowledges that. Moreover, your honor, our case law makes it very clear that if someone is going to use the protections, and in order to make his prima facie case, he has to show that he engaged in protected activity, and then he suffered an adverse action. Here, National Grid informed him in writing, and it is undisputed, in a letter of July 30th, that he got at 10.36 a.m. in an email, that in fact he would have been deemed to have resigned that day, or he could choose to resign and get severance. He doesn't come back. He doesn't say anything until later that morning. He then sends a response that has a little sass in it, which was consistent with his past history, which is quite irrelevant here. Those deal with his other claims that were not appealed. But he notes that he is asking for the first time that he gets an accommodation. Now your honors, counsel can, oh, go ahead. Let me quickly ask you this. I think his, I read his deposition testimony to say, or to suggest at least, that he did ask for a reasonable accommodation in that July 22nd phone call to Dombrowski. Is that sufficient? Let's assume that the deposition clearly says that. Is that sufficient to put an employer on notice of a reasonable accommodation having been made? I would say no, your honor, and here are the following reasons. First, I disagree that he testified that he said it clearly. Second of all, that conversation with Ms. Dombrowski has to do specifically with the requirements with regard to quarantining. And in fact, the conversation has to do with the fact that Mr. Harris was supposed to be presenting on the 27th and on the, I mean, 28th and 29th in Rhode Island on a matter that he, in fact, was doing the training and the rollout in. It is undisputed that Ms. Dombrowski reaches out to him regarding that training and talks to him about the need to check on quarantine. And in fact, she notes that she doesn't know the various quarantine requirements because National Grid has service areas in Massachusetts, Rhode Island, and New York, and he is referred to medical not because he has a reasonable accommodation request or he even suggested it, but more so because he needed to determine what, if any, quarantining requirements he had. And that's the sum and substance of the conversation. And again, your honors, he does note, and he does admit in the record, when you look at the statement of facts at paragraph 75, which is at A1400, that he did not raise any of those issues until after. So as our case law makes very clear, you cannot have retaliation without the protected activity. Counsel, can I ask you about that? Because one thing that I've been trying to figure out is, I saw your citation to that part of the record and I read that part of the record, but I believe some of our case law says that when a termination decision is made, but then the actual termination doesn't take place for some period of time, that a plaintiff could show, if a plaintiff could show that the outcome would have been different if there weren't a reasonable accommodation request in the intervening time period, that that would be enough to defeat summary judgment. I believe that's the Maselli case. So I just wanted to, and I don't think you addressed that in your brief, I just wanted to get your position on that. In other words, even though he was told on July 30th that you have to be working remotely in Massachusetts unless you had previous permission, which you didn't, he's not terminated until several weeks later and in the intervening time there's a reasonable accommodation request. If he had shown a dispute of material fact about whether there would have been a different outcome, could he have survived summary judgment? What's your position? Your Honor, I actually think Maselli makes our point. And it makes it quite well. Because in Maselli, like the case of Mr. Harris, and again, he's not appealing all of his issues with his poor attitude, right? This case had a lot of different tentacles. It claimed race, it claimed all sorts of things, but the only things on appeal are these retaliation claims. And the thing that Maselli says, but that it's specifically on point is, and I'm reading the decision, and I think it said, I have to admit, citing Pearson, I believe. It says, when problems with an employee predate any knowledge that the employee has engaged in protected activity, it is not superlative to draw the inference of subsequent adverse actions taken after the employer acquires such knowledge as motivated by retaliation. So here, Your Honor, let's note what- Counsel, my question, if you have it. If you have the case, my question is about language that comes in the next paragraph. Where, in Pearson? In Maselli, it quotes Pearson, but then in the next paragraph, we say, even though the employer's final decision to discharge the plaintiff did not occur until after the protected activity, we concluded that the plaintiff would have had to show that the outcome would have differed if not for the employer's knowledge of the protected activity. So that's my question. You say you're going to terminate, he makes a reasonable accommodation, and the termination doesn't happen for a period of time. And because of that, Your Honor, I would like to draw the Court's attention to that July 30th letter. And the July 30th letter clearly states he's terminated. So I'm sorry, Judge, go ahead. Suppose on August 12th, there's an email from Dunn saying, you know, he's made this request, but I think we should give in and let him stay out of state. And his boss writes back and says, I would agree with you, except the son of a gun filed a reasonable accommodation request against us, so I don't want to give him any benefit. If we had that scenario here, wouldn't they have a claim? And so you just need to, though, explain why we don't have that scenario. Well, you don't have that scenario, Your Honor, first, because of the July 30th letter that unequivocally states that he is deemed to have resigned as of July 30th. Right, but even with the letter, if the example I just gave you were apical, I would think there would be a claim.  But the decision was made. So you've got to say there was nothing after July 30th that suggests that the decision could have been revisited or undone. Well, Your Honor, I think it's the facts in this case that we must focus on. And I think the key facts here, and as you noted, were that on July 30th, he gets the  He then raises the question about an accommodation. And they provide him the information to go through that process. The decision to terminate was made, but it was paused. And he was provided an opportunity to provide information. He also, subsequently, and we only know it after the fact, does make a request for FMLA. And that's, Your Honor, about August 6th. But he makes a request regarding his mother, and then he retracts it the same day. And so, Natural Grid has no knowledge of that. He has an opportunity to provide information. He does not provide adequate documentation. And he acknowledges he is specifically told that the letter he submitted that is dated August 7th, that merely states that I believe it would be beneficial for him not to have to be in person, is the only evidence regarding the requested accommodation. So even following on that logic, in the facts on this case, we do not have something that somebody says, oh, that son of a gun. Why the heck did we not terminate and keep it effective? Because he's now raised these issues. In fact, National Grid did the right thing. National Grid said, okay, provide us the information. And he does it. And because of that, it effectuates the course of action that has already been set in motion by the decision. And the one fact I'd like to note is his reliance on Fournier is an apposite, because Fournier, there were two options and nothing had been decided. Thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record? He has a one minute rebuttal. May it please the court, Alan Creed for Sandy Harris. Judy Dunn was the one who sent the July 30th letter. That's supposedly a termination decision. But Judy Dunn's own testimony is that even as of August 7th, a week after that letter, there was no termination decision. Question on A994 of the record appendix from her transcript. So far as you know, on August 7th, when you were providing Sandy materials and resources to help him apply for FMLA, had a decision to terminate Sandy been made? Answer, I wouldn't say that the decision had been made, no. So what happens is that in response to this letter, Mr. Harris responds to Dunn and requests reasonable accommodation from Dunn. And that same email, Harris emails back and says, if this request is denied, I will drive back to the service area immediately. What happens then in response is that National Grid gives Mr. Harris, and this is conceded in defendant's brief, quote, National Grid allowed plaintiff to continue working remotely while he considered severance and pursued his accommodation request. That's the chronology, and certainly the chronology that in summary judgment should be viewed in the light most favorable to plaintiff. Thank you. Thank you. Thank you counsel, that concludes argument in this case.